**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID IZSAK, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 15-cv-7620 |
| Plaintiff, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| SMOOCHY BRANDS LLC, a New York limited liability company, corporation, and CM PRODUCTIONS, LLC, a Delaware limited liability company, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff David Izsak ("Plaintiff") brings this Class Action Complaint against Defendants Smoochy Brands LLC ("Smoochy") and CM Productions LLC ("CMP") (collectively, "Defendants"), on behalf of himself and all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I. NATURE OF THE ACTION

1. Smoochy and CMP are companies that offer memberships to pornographic websites. In an effort to market their products and services, Defendants sent (or directed to be sent on their behalf) unsolicited text messages to the wireless telephones of Plaintiff and each of

the members of the Class without prior express written consent[1] in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.      Neither Plaintiff nor the other Class members ever consented in writing, authorized, desired or permitted Defendants to send text messages to their wireless telephones.

3.      By sending such unauthorized text messages, Defendants caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages, and the monies paid to their wireless carriers for the receipt of such messages.

4.      In order to redress these injuries, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited text message activities, an award of statutory damages to the Class members under the TCPA, and an award for damages for conversion, together with costs and reasonable attorneys' fees.

## II.      JURISDICTION AND VENUE

5.      This Court has original jurisdiction over Count I pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States and further.

6.      The Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367 because it arises out of the same case or controversy as Count I.

7.      This Court has personal jurisdiction over Defendants under the Illinois long-arm statute, 735 ILCS 5/2-209, because Defendants engaged in solicitation or service activities within the State of Illinois. This Court also has personal jurisdiction over Defendants because a substantial a portion of the wrongdoing alleged in this Complaint took place in and/or was

---

[1] As of October 16, 2013, prior express **written** consent is required. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order (FCC Feb. 15, 2012) (amending 47 C.F.R. 64.1200(a)(2)).

directed toward this State. Defendants, by sending mass text messages into this State soliciting business, has sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this District.

### III.     PARTIES

*Plaintiff*

9.     Plaintiff David Izsak is an individual domiciled in Cook County, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the State of Illinois.

*Defendants*

10.     Defendant Smoochy is a limited liability company organized in and existing under the laws of the State of New York with its principal place of business located at 274 North Goodman Street, Suite B275, Rochester, New York, 14607.

11.     Defendant CMP is a limited liability company organized in and existing under the laws of the State of Delaware with its principal place of business located at 274 North Goodman Street, Suite B275, Rochester, New York, 14607.

12.     Defendant CMP has three members:

a. Jaroslad Hevery, managing member, residing in Orinda, California;

b. Mark Hoashi, member, residing in San Francisco, California;

c. Terron Schoonerman, member, residing in Rochester, New York.

13.     Defendants share the same office.

## IV.    FACTUAL BACKGROUND

***Background on Unsolicited SMS Activity***

14.    In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

15.    One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

16.    SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

17.    According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to phishing schemes—sent directly to user's cell phones."[2] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[3]

18.    Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service

---

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited November 28, 2012).

[3] *Id.*

providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

19. Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

20. As of October 16, 2013, senders of SMS message advertisements for goods or services must obtain the recipient's prior express written consent.

***Defendants' Trademarks***

21. Defendant Smoochy is the registrant of the following trademark:

# WELL HELLO!

(*See* Exhibit A.)

22. Defendant Smoochy is also the registrant of the following trademark related to "online dating, social introduction, and social networking services:"



(*See* Exhibit B.)

23. Defendant Smoochy's trademarks appear on the websites attached hereto as Exhibits I-N, P, S.)

24. Defendant CMP is the registrant of the following trademark:

# BADOINK

(*See* Exhibits C, D.)

25. Defendant CMP is also the registrant of the following trademark related to "[e]ntertainment services, namely, providing a subscription-based web site featuring non-downloadable adult-themed photographs and videos:"



(*See* Exhibit E.)

26. Defendant CMP is also the registrant of the following trademark related to "[e]ntertainment services, namely, providing a subscription-based web site featuring non-downloadable adult-themed photographs and videos:"



(*See* Exhibit F.)

27. Defendant CMP's trademarks appear on the websites attached hereto as Exhibits O, Q, R, T.)

***Defendants' Unsolicited SMS Message Advertisement to Plaintiff***

28. As part of their advertising campaign, Defendants have sent and continue to send unsolicited text messages to Plaintiff's and the Class members' wireless phones without prior express written consent.

29.     On or about June 4, 2015, 2015, Defendants transmitted the following text message to Plaintiff's wireless phone:

> (What does a girl have to do to
> get a guy to buy her a cup of
> coffee?, msg back on that site
> www.bit.ly/1AKg3rC) – Lily-F

A true and correct copy of the text message is attached as Exhibit G.

30.     The "from" field of such transmission was identified as Rxqfoqsllo@jakle.com.

### Defendants' Pornographic Websites

31.     When entered into an Internet browser, the website www.bit.ly/1AKg3rC redirects recipients to a website warning the recipient that the link may contain "inappropriate content" or "spam or malicious code." (*See* Exhibit H.)

32.     A link is provided if the recipient wishes to proceed: https://s3.eucentral-1.amazonaws.com/2new/index.html?7hfd6tftd63GS. (*Id.*)

33.     After clicking on this link, the recipient is directed to a website, http://tours-78-94.wellhello.com (the "Well Hello Site") displaying nudity and offering free registration for men interested in "casual sexual encounters."[4] (*See* Exhibit I.) The Well Hello Site directs the

---

[4] Exhibits I, J, N, and O through T all contain pornographic images. We have redacted the images as a matter of decorum, though we are not necessarily contending that these redactions meet the limited standard of Rule 5.2 of the Federal Rules of Civil Procedure, which limits redactions to "an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number." Nor does this material necessarily satisfy the standard for filing under seal pursuant to Local Rule 26.2, which provides that "good cause" must be shown in order for a document to be filed under seal. *See Bond v. Utreras*, 585 F.3d 1061, 1073-75 (7th Cir. 2009) ("[T]he public has a presumptive right to access discovery materials that are filed with the court, used in a judicial proceeding or otherwise constitute judicial records . . . [and in order to defeat this presumption the document sought to be sealed must] meet the definition of trade secret or other categories of bona fide long-term confidentiality."). Attaching the exhibits would ordinarily be a given from our perspective in order to meet and exceed the applicable pleading standards, and to demonstrate that Defendants are either directly or vicariously liable for the sending of the text messages. If

recipient to answer "simple questions" to see if there are any matches on the "exclusive website." (*Id.*)

34.     The recipient is then asked a series of six questions about the messaging applications he uses and his sexual preferences. (*See* Exhibit J.)

35.     The recipient is then informed of the number of women that match his chosen options and of the number of available registration slots. (*See* Exhibit K.)

36.     After agreeing to certain rules (*Id.*), the recipient is directed to another page on the Well Hello Site asking for personal information. (*See* Exhibit L.) This page asks the recipient to agree to Terms and Conditions of Use and a Privacy Policy, both of which are hyperlinked. (*Id.*)

37.     Upon clicking the Terms and Conditions of Use hyperlink, the recipient is directed to another website which introduces Defendant Smoochy: "Welcome to WellHello.com! WellHello.com is owned and operated by Smoochy Brands, LLC, a New York limited liability company." (*See* Exhibit M.)

38.     The Terms and Conditions of Use hyperlink also informs readers that "most Services require a premium membership." (*Id.* at § 5(c).)

39.     After the recipient provides the personal information requested (*see infra*, ¶36), he is offered three tiers of paid-membership for using the Well Hello Site. (*See* Exhibit N.)

40.     If the recipient tries to click "back" on his Internet browser, he is not directed to the last viewed page. Instead, he is directed to a series of websites owned and operated by Defendants. (*See* Exhibits O-T.)

41.     These websites advertise Defendants' products or membership services.

---

the Court directs us to file an unredacted version of the Complaint, we will do so immediately. But, for reasons explained above, we thought it prudent to file the initial version of these exhibits as redacted (even though the letter of Rule 5.2 might not be strictly satisfied).

42.     Accordingly, Defendants designed a text message campaign that would advertise their various websites.

43.     Plaintiff is not and has never been a member of Defendants' websites.

44.     Defendants sent or transmitted, or had sent or transmitted on their behalf, the same (or substantially the same) text messages *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

45.     On information and belief, Defendants sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

46.     Plaintiff never consented to in writing, requested, or otherwise desired or permitted Defendants to send or transmit text messages to his wireless phone.

## V.     CLASS ALLEGATIONS

47.     Plaintiff brings this action, as set forth below, on behalf of himself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States who received a non-emergency, unsolicited text message to their wireless telephones from Defendants Smoochy Brands, LLC and CM Productions, LLC through the use of an automatic dialing system, at any time within the four years prior to the filing of the instant Complaint (the "Class").

Excluded from the Class are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

48.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

49.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous that individual joinder of all Class members is impracticable.   On information and belief, there are thousands of consumers who have been damaged by Defendants' wrongful conduct as alleged herein.   The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendants' books and records.   Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

50.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.  the manner in which Defendants obtained Plaintiff's and the Class' wireless telephone numbers;

    b.  whether the equipment Defendants' used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

    c.  whether Defendants' conduct constitutes a violation of the TCPA;

        whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

    d.  whether Plaintiff and the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

    e.  whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

51.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

52.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members he seeks to represent; he has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously.   The interests of the Class members will be fairly and adequately protected by Plaintiff and his counsel.

53.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

54.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties,

and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.   CLAIMS ALLEGED

### COUNT I
**Violation of the TCPA, 47 U.S.C. § 227**
**(On behalf of the Class)**

55.    Plaintiff incorporates by reference paragraphs 1-54 as if fully set forth herein.

56.    Defendants and/or their agents sent unsolicited commercial text messages to the wireless telephone number of Plaintiff and the other Class members *en masse* without their prior express written consent.

57.     Defendants sent the text messages, or had them sent on their behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

58.    Defendants utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

59.    By sending the unsolicited text messages to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

60.    Should the Court determine that Defendants' conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## COUNT II
### Conversion
### (On behalf of the Class)

61.     Plaintiff incorporates by reference paragraphs 1-54 as if fully set forth herein**.**

62.     By sending texts to Plaintiff's and the other Class members' wireless telephones, Defendants converted to their own use data usage under Plaintiff's and the other Class members' wireless telephone plans and components of Plaintiff's and the other Class member's wireless telephones.

63.     This loss of use constitutes an asset of economic value paid for by Plaintiff and the other Class members when they acquired their wireless telephones and subscribed for wireless telephone service.

64.     Immediately prior to the sending of the texts, Plaintiff and the other Class members owned and had an unqualified right and immediate right to the possession of wireless telephones and the data service under their wireless telephone plans used to receive Defendants' texts.

65.     By sending texts (or directing texts to be sent on their behalf), Defendants appropriated to their own use the data usage and wireless telephones used to receive the texts in such a manner as to make them unusable or decrease their performance. Such appropriation was wrongful and without authorization.

66.     Defendants knew or should have known that such appropriation of the data usage and phone components was wrongful and without authorization.

67.     Plaintiff and the other Class members were deprived of the data usage and performance of their wireless telephones, which could no longer be used for any other purpose.

-13-

68.     Accordingly, Plaintiff and the other Class members suffered damages as a result of the receipt of the texts.

## VII.     JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff David Izsak, individually and on behalf of the Class, requests that the Court enter an Order as follows:

A.     Certifying the Class as defined above, appointing Plaintiff David Izsak as the representative of the Class, and appointing his counsel as Class Counsel;

B.     Awarding of actual and statutory damages;

C.     Requiring Defendants to cease all text message activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

D.     Awarding of reasonable attorneys' fees and costs; and

E.     Awarding such other and further relief that the Court deems reasonable and just.

Dated: August 30, 2015

Respectfully submitted,

By: /s Joseph J. Siprut

Joseph J. Siprut
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260

*Counsel for Plaintiff
and the Proposed Putative Class*

4829-6836-4838, v. 1

-14-